UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Lassley, ) | |
| ) | |
| Plaintiff, ) | 2:14-cv-1677 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| Secura Supreme Ins. Co., ) | [Re: Motion at docket 40] |
| ) | |
| Defendant. ) | |
| ) | |

## I.  MOTION PRESENTED

At docket 39 the court issued the protective order sought by plaintiff Brandon Lassley ("Lassley") at docket 26, denied the motion to compel filed by defendant Secura Supreme Insurance Company ("Secura") at docket 29, and ordered Secura to pay Lassley's reasonable attorney's fees under Rules 26(c)(3) and 37(a)(5).  Lassley's application for attorney's fees is at docket 40, supported by the affidavit of Lassley's counsel, Christopher S. Welker ("Welker"), at docket 40-1.  Welker filed a supplemental affidavit at docket 42 that names the attorneys that were listed only by their initials in his previous affidavit, provides their biographies, and includes a copy of Lassley's

contingent fee contract.[1] Secura's opposition is at docket 43. The court did not seek a reply from Lassley. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The background to this case is set out in the court's order at docket 39 and need not be repeated here. Suffice it to say for present purposes that Lassley is seeking $15,450 in attorney's fees for 61.6 total hours of work: 40.2 hours from senior associate Justin Holm ("Holm") at $250 per hour ($10,050); 11.2 hours from partner Welker at $300 per hour ($3,360); and a combined 10.2 hours of junior associate time at $200 per hour ($2,040)—5.6 hours from Tim Ray ("Ray") and 4.6 hours from Richard Carpenter ("Carpenter").[2] These four attorneys' 61.6 hours of work culminated in a nine-page protective order motion[3] and thirteen-page combined reply in support of that motion and opposition to Secura's motion to compel.[4]

## III.  STANDARD OF REVIEW

Rule 37(a)(5) applies to the award of expenses related to successful protective order motions[5] and to unsuccessful motions to compel.[6] It provides that the court must award the prevailing party its "reasonable expenses," including attorney's fees, in

---

[1] Doc. 42-1.

[2] Doc. 40-1 at 4-13.

[3] Doc. 26.

[4] Doc. 33.

[5] Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(A).

[6] Fed. R. Civ. P. 37(a)(5)(B).

making the protective order motion or opposing the motion to compel.[7] When assessing the reasonableness of a request for attorney's fees, the court applies a two-part "lodestar" approach.[8] The court must first determine the "lodestar" figure by multiplying the number of hours reasonably expended by a reasonable hourly rate.[9] Second, the court "may adjust the 'presumptively reasonable' lodestar figure based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*,[10] that have not been subsumed in the lodestar calculation."[11] The fee applicant has the burden of submitting evidence to support the hours and rates claimed.[12]

## IV.  DISCUSSION

**A.     Lodestar Calculation**

    **1.     Hours reasonably expended**

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case."[13] Yet, the district court may "reduce the amount of requested fees to reflect a party's limited

---

[7] Fed. R. Civ. P. 37(a)(5)(B).

[8] *See Stokes v. Microsemi Corp.*, No. CV02-1689-PHX, 2003 WL 22114276, at *2 (D. Ariz. Sept. 10, 2003) (applying the lodestar methodology to Rule 37 sanctions); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C06-03359JF(RS), 2009 WL 3617786, at *1 (N.D. Cal. Oct. 29, 2009) ("When, as here, attorneys' fees are being awarded pursuant to the discovery sanctions provisions of Federal Rule of Civil Procedure 37, courts generally use the 'lodestar' approach to calculate the proper fee amounts.").

[9] *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).

[10] 526 F.2d 67, 70 (9th Cir. 1975)

[11] *Intel Corp.*, 6 F.3d at 622.

[12] *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

[13] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

degree of success, to account for block billing, or to deduct those hours the court deems excessive."[14]  Secura argues that 61.6 hours is excessive given that the motions did not involve dispositive questions, difficult questions of law, or complicated facts.[15]  It specifically challenges the following time entries:

### a.)    Preliminary work

Lassley filed the protective order motion on May 6.  Secura objects to time entries in March and April for "preliminary work" that it argues is not related to the motion.  The court disagrees; the time Secura identifies was spent "making"[16] the protective order motion:

- Holm and Welker each spent 0.2 hours on March 11 conferring with opposing counsel regarding the disputed document requests.

- On March 11 Holm spent 0.6 hours working with Welker on "HIPAA authorization and protective order strategy," and Welker spent 0.3 hours analyzing "objections to defendant's requests for drug rehabilitation records."

- Welker spent 0.6 hours on March 16 conferring with opposing counsel regarding the document requests.

---

[14]*Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citations omitted).

[15]Doc. 43 at 3-4.

[16]Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted . . . the court must . . . require the party . . . whose conduct necessitated the motion . . . , the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred *in making the motion*, including attorney's fees.") (emphasis added).

-4-

- On March 16 Holm spent 0.4 hours working with Welker on "motion for protective order strategy," and Welker spent 0.5 hours researching objections to Secura's records request.
- On April 16 Holm spent 0.3 hours working with Welker on "response strategy and protective order."

### b.) Legal research

Lassley's lawyers spent 12 hours conducting legal research for the protective order motion, broken down as follows:

- Holm (6.5 hours): 1.4 hours researching the standard for protecting drug-treatment records; 2.8 hours researching "patient-physician privilege in Arizona"; 1.4 hours researching the standard for "waiver of medical-records privilege"; and 0.9 hours researching the availability of attorney's fees.
- Ray (5.3 hours): 1.1 hours researching the District of Arizona and Ninth Circuit standard for requesting a protective order; 1.2 hours researching Rule 26(c); 1.2 hours researching "ability to ask for protective order concerning drug treatment and medical records that will embarrass a party"; 0.2 hours researching Wright & Miller on "federal discovery rules"; 0.6 hours researching related caselaw; and 1 hour researching Moore's Federal Practice guide.
- Welker spent 0.2 hours researching caselaw regarding protective orders related to "rehab records."

Lassley's lawyers spent 4.6 hours conducting research for the reply brief:

- Welker (1.7 hours): 1.1 hours conducting "research and analysis in support of reply," and 0.6 hours conducting "research and analysis regarding reply."
- Carpenter (1.5 hours): 0.4 hours researching the waiver doctrine, and 1.1 hours researching "discoverability of information sought solely for impeachment or character evidence."
- Holm spent 1.1 hours researching the "basis for privilege and interpretation of same by federal courts."
- Ray spent 0.3 hours researching the local rules regarding page limits.

Secura objects that all of this research "should have taken an associate no more than four or five hours" to complete.[17] The court agrees with Secura that 16.6 total hours of legal research is excessive, but disagrees that anything more than five hours is excessive. The court will reduce the time Holm and Ray spent researching the original protective order motion to 3.5 hours each, down from 6.5 and 5.3 hours respectively, which reflects a reasonable amount of time and accounts for the fact that their research was somewhat redundant.[18] This reduces the senior associate time by 3 hours and the junior associate time by 1.8 hours.

---

[17] Doc. 43 at 5.

[18] *Cf. Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("In making adjustments to hours claimed, the district court is charged with deducting for redundant hours.").


### c.)  Lassley's request for an extension of time

On June 10 Lassley filed a one-page stipulated motion for an extension of the deadline for filing his combined reply and opposition.[19]  Lassley's lawyers spent 1.6 hours on this motion:

- On May 28 Welker spent 0.2 hours conferring with opposing counsel about the motion;

- On June 9 Holm spent 0.7 hours drafting the stipulation and 0.2 hours transmitting it to opposing counsel; Welker spent 0.2 hours revising the stipulation and 0.2 hours conferring with opposing counsel about it; and

- On June 11 Welker spent 0.1 hours "evaluating" the court's order granting the parties' stipulation.

Secura argues that Lassley should not be able to recover any of this time because it was spent "solely for his attorneys' convenience" and the motion was "readily agreed to by defense counsel."[20]  But, because this motion was reasonable,[21] the court disagrees with Secura's contention that Lassley should recover nothing.  The court finds that 1.6 hours is excessive, however.  The time Holm spent drafting this one-page stipulated motion will be reduced from 0.7 hours to 0.2 hours, and the time Welker spent

---

[19]Doc. 31.

[20]Doc. 43 at 6.

[21]*See Holmes v. Astrue*, No. CIV.A. 3:08-1829, 2010 WL 3220085, at *2 (D. S.C. Aug. 12, 2010) ("[C]ourts have engaged in a case-by-case analysis of attorney fee requests for time spent filing and reviewing motions for extension of time, looking closely at the circumstances of each request.").

-7-

evaluating the court's order granting the motion will be removed.  This reduces the senior associate time by 0.5 hours and the partner time by 0.1 hours.

### d.) Oral argument

Lassley seeks fees for the 0.3 hours of time that Welker spent preparing for an oral argument that was never scheduled.  This task was not reasonably necessary; the court will reduce the partner time by 0.3 hours.

### e.) Double billing

Secura accuses Welker and Holm of double billing for the 0.6 hours that each spent "evaluating" and "analyzing" Secura's reply brief on July 1.  "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."[22]  The court finds that it was not unreasonable for the partner and senior associate working on this case to each review Secura's reply brief.

### f.) Time spent drafting and revising

Holm and Welker spent a total of 31.9 hours drafting and revising the two at-issue filings, with Holm spending 28.2 hours and Welker spending 3.7.  Holm spent 13.2

---

[22]*Cf. Norman*, 836 F.2d at 1302.

hours drafting and revising the initial motion;[23] Welker spent 1.7 hours revising it.[24] Holm spent 15 hours on the combined reply and opposition brief;[25] Welker spent 2 hours working on it.[26] Secura argues that 31.9 hours is excessive and, at most, the work required 17.5 hours of associate time and five hours of partner time.[27] But, because the court cannot say that these hours are inherently excessive, there will be no reduction in time.

### 2. Reasonable hourly rates

"Fee applicants have the burden of producing evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[28] As Lassley observes, the Ninth Circuit has held that "'[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the

---

[23]On April 23 he spent 0.7 hours reading Lassley's deposition transcript, 3.2 hours drafting the protective order, and 1.4 hours checking citations and quotations. On April 24 he spent 1.6 hours revising the motion and 0.9 hours drafting changes to citations and quotations. On May 4 he spent 0.3 hours drafting an addition to the protective order motion. On May 5 he spent 1.6 hours revising the protective order motion and 0.3 hours drafting the attorney's fees section. On May 6 he spent 2.6 hours revising motion and 0.6 hours compiling exhibits.

[24]On May 5 he spent 0.6 hours and on May 6 he spent 1.1 hours revising the motion.

[25]On June 17 he spent 1.9 hours analyzing Secura's motion and opposition, 0.7 hours working on a reply strategy with Welker, and 0.8 hours drafting the reply. On June 18 he spent 8.8 hours drafting the reply. On June 19 he spent 1.9 hours revising the reply, 0.7 hours checking footnotes and citations, and 0.2 hours finalizing the reply.

[26]0.5 hours on June 17 and 1.5 hours on June 19.

[27]Doc. 43 at 6.

[28]*Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).

prevailing market rate.'"[29]  Welker's affidavit states that the requested hourly rates—$300 for a partner, $250 for a senior associate, and $200 for junior associates—are fair and reasonable based on "his knowledge and experience in this area of the law."[30]  The court finds that this evidence is sufficient to shift the burden to Secura to rebut Welker's affidavit with evidence challenging these rates.[31]

Secura argues that Lassley's lawyers' hourly rates are unreasonable because his lawyers are primarily insurance defense attorneys, and such attorneys "do not bill at the rate of $300 per hour, or even $200 per hour."[32]  Secura's counsel states that he "can avow" to these facts, but he does not submit an affidavit or any other evidence to support this avowal.  More importantly, Secura fails to offer alternative hourly rates that it believes would be more reasonable, or explain why insurance-defense-counsel rates even apply here where Lassley's attorneys are not acting as insurance defense lawyers but as plaintiff-side personal injury lawyers.  The court finds that Secura has not met its burden of rebuttal, and although Lassley's lawyers' hourly rates are on the high end of the spectrum,[33] they are in line with prevailing market rates.

---

[29]*Id*. (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

[30]Doc. 40-1 at 2.

[31]*Chaudhry*, 751 F.3d at 1110-11 ("Once a fee applicant presents [evidence of the prevailing market rate], the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.'") (quoting *Camacho*, 523 F.3d at 980).

[32]Doc. 43 at 5.

[33]*See, e.g., Agster v. Maricopa Cty.*, 486 F. Supp. 2d 1005, 1014-15 (D. Ariz. 2007) (determining that, as of about 8.5 years ago, the prevailing hourly rates in the community were between $300 and $400 for "senior trial lawyers handling large, complex litigation;" $180 for

B.   *Kerr* Factor Adjustments

Although "the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier"[34] according to the factors articulated by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*[35] The original twelve so-called *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) the contingent or fixed nature of the fee; (7) the limitations imposed by the client or the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature of the professional relationship with the client; and (12) awards in similar cases.[36]

"At least one factor is no longer valid—whether the fee was fixed or contingent."[37] And many of the remaining factors are "'subsumed within the initial calculation of hours reasonably expended at a reasonable rate'"[38] and "only warrant a departure from the lodestar figure in 'rare and exceptional cases.'"[39]

---

senior associates and junior partners; and $160 for all other associates).

[34] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (quoting *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir.1988)).

[35] 526 F.2d 67, 69-70 (9th Cir.1975).

[36] *Id.* at 70.

[37] *Bluetooth*, 654 F.3d at 942 n.7 (citing *Davis v. City and Cnty. of S.F.*, 976 F.2d 1536, 1546 (9th Cir. 1992)).

[38] *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)).

[39] *Id.* (quoting *Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)).

The first three *Kerr* factors—time and labor required; novelty and difficulty of the issues; and skill necessary—are subsumed in the court's lodestar calculation and warrant no adjustment. Factors five, eight, nine, ten, and eleven—customary fee; amount involved and results obtained; experience reputation and ability; undesirability of the case; and nature of the professional relationship—warrant no adjustment. Factor four (preclusion of other employment) and factor seven (limitations imposed by the client or the case) are not relevant to the circumstances here. Finally, factor twelve, awards in similar cases, is a consideration more appropriate to fee awards based on prevailing in the litigation as a whole. In sum, the *Kerr* factors do not warrant an adjustment.

## V.  CONCLUSION

Based on the preceding discussion, the motion at docket 40 is GRANTED. Secura is HEREBY ORDERED to pay Lassley $14,095.

DATED this 25th day of November 2015.


                              /s/ JOHN W. SEDWICK
                    SENIOR UNITED STATES DISTRICT JUDGE